17 P.3d 301

STATE of Idaho, Plaintiff–Appellant,

v.

Doris Ann PARKINSON, Defendant–Respondent.

No. 25854.

Court of Appeals of Idaho.

Dec. 18, 2000.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Douglas D. Phelps, Spokane, WA, for respondent.

SCHWARTZMAN, Judge.

The state appeals from the district court's order granting Doris Ann Parkinson's motion to suppress evidence resulting from a search subsequent to a drug dog sniff conducted during a routine traffic stop. The state argues that the district court erred in concluding that police questioning about drugs and weapons and the dog sniff were not reasonably related to the traffic stop, thus exceeding its scope. We reverse.

1. The basis for the stop is not in dispute. The trial court's conclusion that any of the violations

**I.**

## FACTUAL AND PROCEDURAL BACKGROUND

On January 25, 1999, at about 2:45 p.m., Ponderay City Police Officer David McClelland observed a red Dodge truck with an "extremely cracked windshield" and a small amount of sawdust coming out of the truck bed. McClelland paced the truck at fifty miles per hour in a forty-five mile-per-hour zone.[1]

McClelland conducted a traffic stop, contacting the driver, Doris Ann Parkinson, and obtaining her driver's license and registration. Parkinson initially could not locate proof of insurance. However, before McClelland began to write out a citation for no proof of insurance, a violation of I.C. § 49–1232, Parkinson gave McClelland a document purporting to show proof of insurance—an SR22 insurance form issued on December 2, 1998 with no expiration date. McClelland informed Parkinson that he would still be issuing her a citation for no proof of insurance because the SR22 form had no expiration date. McClelland advised Parkinson that failure to carry proof of insurance was dismissible upon proof of insurance. McClelland then returned to his vehicle, contacted dispatch to run a driver's check and began to write out the citation for no proof of insurance.

About that time, Idaho State Patrol Corporal Terry Ford arrived at the scene with Rosie, his drug dog. With McClelland's approval, Ford contacted Parkinson and asked her a series of questions about whether she had any open containers of alcohol, various drugs or weapons in the truck. Based upon Parkinson's "Ah, no," responses to his questions about marijuana and methamphetamine, Ford told Parkinson he would like to run his dog around the outside of her vehicle. Ford explained that Rosie would alert if there were drugs in the vehicle. Ford walked Rosie around the truck and she alerted on the driver's side door.

McClelland noticed Rosie alerting, re-approached Parkinson's truck and had her exit

observed by McClelland would have sufficed as a basis for the traffic stop is uncontested.

the truck and stand by the tailgate. Ford told Parkinson that Rosie had alerted on the side of the truck. When Ford asked Parkinson, "Where are they at," she indicated her purse. Ford placed Rosie inside the cab of the truck and Rosie alerted on a black leather purse. While Rosie was inside the truck cab, McClelland patted Parkinson down. During the frisk, McClelland felt several objects in her coat pocket that, upon removal, he recognized as drug paraphernalia—a pipe commonly used to smoke marijuana, a metal tin and a snort tube containing powdery residue. Ford searched Parkinson's purse and found several small containers with powdery residue and a metal container filled with a leafy, green substance believed to be marijuana. Parkinson was arrested and charged with possession of a controlled substance, methamphetamine, a felony pursuant to I.C. § 37–2732(c)(1).

Following the preliminary hearing, Parkinson filed a motion to suppress asserting, among other allegations, that the questioning and use of the drug dog were not reasonably related to the scope of the traffic stop. At the hearing on the motion to suppress, McClelland, Ford and Parkinson all testified. Thereafter the district court issued its findings of fact mirroring those set forth above. The court also found that Ford arrived about four minutes after McClelland initiated the traffic stop and that the entire incident, ending with Parkinson's arrest, lasted approximately ten to fifteen minutes, a period no greater than the duration of a normal traffic stop. The district court then explained that the fact that the duration of the stop did not exceed that of a routine traffic stop was not dispositive. Rather, the officer's questioning and use of the drug detection dog, for purposes unrelated to the initial purpose of the stop and in the absence of reasonable suspicion, violated Parkinson's Fourth Amendment right to be free from unreasonable searches and seizures. The district court then granted Parkinson's motion to suppress. The state appeals.

## II.

### STANDARD OF REVIEW

■ In evaluating a ruling on a motion to suppress, we defer to factual findings of the trial court unless they are clearly erroneous, but we freely review the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found. *State v. Morris,* 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998); *State v. Pick,* 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988). The district court's findings of fact are unchallenged. Although the court did not consider whether Ford's questioning and use of the drug detection dog caused the detention to be more intrusive than necessary to effectuate the purposes of a routine traffic stop, the degree of such an intrusion is a question of reasonableness under the Fourth Amendment. The reasonableness of a given search or seizure is a question of law requiring our independent review. *Morris,* 131 Idaho at 565, 961 P.2d at 656; *State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App. 1993); *Heinen,* 114 Idaho at 658, 759 P.2d at 949. Accordingly, we exercise free review. *See State v. Reese,* 132 Idaho 652, 653, 978 P.2d 212, 213 (1999).

## III.

### POLICE QUESTIONING WHICH INCREASES THE SCOPE OR DURATION OF DETENTION DURING A TERRY STOP MAY RESULT IN A FOURTH AMENDMENT VIOLATION

#### A. The District Court's Reasoning

■ This case presents a narrow question of law regarding a brief and discrete period of time during a traffic stop—whether Ford's inquiry into the presence of drugs, firearms and open containers of alcohol, and then his use of a drug detection dog to sniff the exterior of Parkinson's truck, violated her Fourth Amendment rights. On this question, the district court explained that while the duration of the seizure was brief and the intensity of the investigation was not excessive, Ford's questioning was clearly directed towards Parkinson's involvement in crimes unrelated to the traffic stop. Citing two

federal cases, the court reasoned that to allow police officers the unfettered discretion during a routine traffic stop to inquire into criminal acts for which there is no reasonable suspicion would undermine the privacy interests protected by the Fourth Amendment.[2] The district court then ruled that Ford's questioning about the presence of drugs or alcohol and his use of the drug detection dog exceeded the scope of the traffic stop, and on that basis granted Parkinson's motion to suppress. In light of this ruling, the court specifically declined to address other issues, such as whether Parkinson was in custody for *Miranda* purposes after the drug dog alerted.

The state argues that the district court erred as a matter of law by granting Parkinson's motion to suppress because the duration of the traffic stop initiated by McClelland was not increased by Ford's questioning of Parkinson or his use of the drug detection dog on the exterior of Parkinson's truck. In this case, we agree.

**B. Applicable Law**

■ As stated in *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, 904–08 (1968), the determination of whether an investigative detention is reasonable requires a dual inquiry—(1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place."[3] Here, Parkinson does not contest the basis for the stop. Thus, we address only the second prong of this inquiry, whether Ford's questioning and use of the drug detection dog were reasonably related in scope to the circumstances which justified the traffic stop.

■ The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described "place to be searched, and the persons or things to be seized," even where the search is made pursuant to a warrant issued upon probable cause. *Florida v. Royer*, 460 U.S. 491, 499–500, 103 S.Ct. 1319, 1324–26, 75 L.Ed.2d 229, 236–39 (1983). The reasonableness requirement of the Fourth Amendment requires no less when the police action is a seizure based upon reasonable suspicion such as the brief seizure permitted under *Terry*. *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325, 75 L.Ed.2d at 237. Where a person is detained, the scope of detention "must be carefully tailored to its underlying justification." *Id.*

■ An examination of *Royer* leads us to conclude that the United States Supreme Court's focus was on the intensity, as well as the duration, of the detention.

The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *See, e. g., United States v. Brignoni Ponce*, [422 U.S. 873, 881–882, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607, 616 (1975) ]; *Adams v. Williams*, [407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972)]. It is the State's burden to demonstrate that the

---

·2. We note that the authorities cited by the district court, *United States v. Walker*, 941 F.2d 1086, 1088 (10th Cir.1991) cert. denied, 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992), and *United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir.1998) are distinguishable from the case at bar. In both *Walker* and *Beck*, the officer ceased any pursuit of the original reasons for the stop to ask questions unrelated to the purpose of the initial stop, and thereby extended the duration of the stop. In the present case, McClelland continued to pursue his investigation into and citation for no proof of insurance, while Ford questioned the driver about drugs and used his

drug dog to sniff the outside of the car for drug odors. There is no evidence to suggest that McClelland was purposely delaying the ticket writing process so that Ford could engage in a fishing expedition for drug interdiction purposes. *See State v. Zavala*, 134 Idaho 532, 5 P.3d 993 (Ct.App.2000).

3. A routine traffic stop is a limited seizure that closely resembles an investigative detention under *Terry*. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).

**362**

seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Id.,* at 500–01, 103 S.Ct. at 1325–26, 75 L.Ed.2d at 237–39. This is not to say that the purpose of the stop is fixed at the time the stop is initiated. As this Court has recognized:

> [A]ny routine traffic stop might turn up suspicious circumstances, which could justify an officer asking questions unrelated to the stop. The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for particular lines of inquiry and further investigation by an officer.

*State v. Myers,* 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App.1990).

The issue in the present case has generated significant legal discussion, and a split of authority between the Fifth and Tenth Circuit Courts of Appeal, as to whether an officer's questioning unrelated to the purposes of the stop is itself a Fourth Amendment violation, even if the length of the stop is not extended. *Compare United States v. Holt,* 229 F.3d 931 (10th Cir.2000) (holding that an officer conducting a routine traffic stop may not ask the detainee questions unrelated to the purpose of the stop, even if the questioning does not extend the normal length of the stop, unless the officer has reasonable suspicion of illegal activity) *with United States v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993) (rejecting the notion that a police officer's questioning, even on a subject *unrelated* to the purposes of the stop, is itself a Fourth Amendment violation).

■ We agree with *Shabazz* to the extent that brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *See and compare State v. Silva,* 134 Idaho 848, 11 P.3d 44 (Ct.App. 2000) (momentary delay in handing motorist his driver's documents and citation, during which officer asked and received consent to search motorist's vehicle, was not objectively unreasonable), *with State v. Zavala,* 134 Idaho 532, 5 P.3d 993 (Ct.App.2000) (defendant illegally detained where all normal proce-

dures for a routine traffic stop were completed before other officers arrived and consent was then sought for a search of defendant's vehicle). Additionally, we believe that the Tenth Circuit's rule in *Holt,* by focusing purely on whether police questioning was reasonably related in subject matter to the initial purpose of the stop, fails to consider that such questioning may have no effect whatsoever on the intensity of the detention. On the other hand, we reject any notion that duration is the only relevant factor. Police domination at the scene of an otherwise routine traffic stop may constitute a *de facto* arrest, *see Myers,* 118 Idaho at 611, 798 P.2d at 456; or the tenor and circumstances of a police inquiry may lead to the conclusion that the detainee is "in custody" for *Miranda* purposes, *see State v. Frank,* 133 Idaho 364, 369, 986 P.2d 1030, 1035 (Ct.App.1999). In each case, a court must analyze whether the police conduct was more intrusive or of longer duration than reasonably necessary to effectuate the investigative detention otherwise authorized by *Terry. Royer,* 460 U.S. at 504, 103 S.Ct. at 1328, 75 L.Ed.2d at 241.

■ As stated by the Court in *Royer,* "We do not suggest that there is a litmus paper test for ... determining when a seizure exceeds the bounds of an investigative stop." *Id.,* at 506, 103 S.Ct. at 1329, 75 L.Ed.2d at 242. The intensity of detention permissible in a given stop turns on the specific facts of the situation and the reasonable inferences officers may draw from those facts. *See, e.g., State v. DuValt,* 131 Idaho 550, 554, 961 P.2d 641, 645 (1998) (approving use of handcuffs, on the facts of the case, to ensure officer safety during a traffic stop); *State v. Slater,* 133 Idaho 882, 889, 994 P.2d 625, 632 (Ct.App.1999) (approving the use of handcuffs on a recently "reformed" drug dealer with a history of violence who had attempted to flee when the officers entered his home to conduct a lawful search).

**C. Ford's Questioning About The Presence Of Drugs And Open Containers Of Alcohol And Use Of Rosie, The Drug Detection Dog, To Sniff The Exterior Of The Truck Did Not Violate Parkinson's Rights**

We note again that the duration of the stop is not at issue. During Ford's questioning

about specific drugs and his use of the drug dog, McClelland was busy checking on Parkinson's driver's status and writing out a citation for no proof of insurance. The basis for the citation is not contested and developed out of McClelland's legitimate investigation of other traffic violations.

Typically, a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose. *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994). While Ford's inquiries about the presence of marijuana, methamphetamine and open containers of alcohol were unrelated to the subject matter initially being investigated by McClelland, we hold that such brief, general questioning, in and of itself, did not extend the scope of Parkinson's detention beyond that necessary to effectuate the purposes of a legitimate traffic stop. *Shabazz, supra.*

Regarding Ford's use of Rosie, we acknowledge that during a lawful traffic stop, the officer may instruct the driver to exit the vehicle or to remain inside. This procedure is within the police officer's discretion and is not otherwise unlawful. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331, 336 n. 6 (1977). Conversely, an officer's instruction to remain inside a vehicle does not alone intensify the level of detention beyond that necessary to effectuate the purposes of a routine traffic stop. Likewise, the presence of a single drug detection dog does not necessarily intensify the level of detention beyond that necessary to effectuate the purposes of a normal traffic investigation.

A dog sniff along the outside of a motor vehicle does not constitute a search under the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120 (1983). The Idaho Supreme Court has previously acknowledged that an officer's investigation at the scene of a stopped automobile can ripen into probable cause as soon as a drug detection dog alerts on the exterior of the vehicle, justifying a search of the interior of the

vehicle without the necessity of obtaining a warrant. *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991); *see also State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct.App. 1996); *Dept. of Law Enforcement v. $34,000 U.S. Currency*, 121 Idaho 211, 824 P.2d 142 (Ct.App.1991). Accordingly, we hold that Ford's brief questioning and his use of the drug detection dog to sniff the *exterior* of Parkinson's truck did not violate Parkinson's Fourth Amendment rights. *Martinez*, 129 Idaho at 431, 925 P.2d at 1130.

We have not been asked to consider whether Rosie's alert provided reasonable suspicion or probable cause justifying entry into and a search of the cab of the truck, and we express no opinion on that question. We also note that the district court did not address Parkinson's alternative basis for suppression, the failure to give *Miranda* warnings when questioned about the location of drugs following Rosie's alert and prior to Ford asking where Parkinson was keeping drugs. A person need not be under arrest to be "in custody" for *Miranda* purposes. *Frank*, 133 Idaho at 369, 986 P.2d at 1035. These questions are still before the district court and may be addressed on remand.

## IV.

## CONCLUSION

The order granting Parkinson's motion to suppress is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

PERRY, C.J. concurs.

LANSING, J. concurs in the result.