# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42689

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 665 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 20, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ERIK BJOREN HARBISON, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. John T. Hawley, Jr., Magistrate.

Order of the district court, on intermediate appeal from the magistrate, affirming judgment of conviction of driving under the influence, <u>affirmed</u>.

William J. O'Connor, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

WALTERS, Judge Pro Tem

Erik Bjoren Harbison appeals from the district court's order on intermediate appeal, affirming his judgment of conviction for driving under the influence of alcohol (DUI). Specifically, Harbision argues that the magistrate erred in denying his motion to suppress. Harbison argues that he was seized by an officer who made a u-turn; parked directly behind Harbison's vehicle, blocking the route of Harbison's entrance; and activated the vehicle's rear-facing, red and blue emergency lights, which were seen by Harbison reflecting in the window of a nearby building. For the reasons set forth below, we affirm.

The facts of this case are undisputed. In its order denying Harbison's motion to suppress, the magistrate made the following factual findings:

1

On July 3, 2013 at approximately 12:16 a.m. [Harbison] was driving a 1998 white Subaru Legacy eastbound on Franklin Road near its intersection with Locust Grove in Meridian, Ada County, Idaho. [An officer] was on patrol also driving eastbound on Franklin Road behind the Subaru. The Subaru caught the officer's attention because it turned left into a business complex parking lot in an area where all the businesses were closed and the area was not a thoroughfare to any other location. The Subaru then proceeded into an unimproved dirt field adjacent to a paved parking lot and the lights on the vehicle went dark.

[The officer] was concerned because the dirt field was in the vicinity of a Planned Parenthood facility which had been the subject of numerous reported crimes, threatened crimes and criminal investigations, in the recent past. [The officer] executed a "U-turn" with his patrol vehicle and pulled into the dirt lot several feet behind the Subaru.

[The officer] did not activate his overhead emergency lights. However, he activated his rear only flashing red and blue emergency lights. He testified that because he was off the roadway and in a dirt field he activated the rear facing lights for officer safety reasons - so that his vehicle could be easily located by other officers, if necessary.

[The officer] was concerned that the occupants of the Subaru might be in the area to vandalize the Planned Parenthood building. [The officer] testified that it would be logical for someone intending to vandalize a building to park some distance away in a vacant field rather than park directly in front of a well-lit building. State's Exhibits 1 and 2, "Google" maps depicting the vacant lot, show that the Planned Parenthood building is approximately one block to the east of where the Subaru stopped. [Harbison's] Exhibit A is also a "Google" map depicting the vacant lot and the approximate location where the Subaru stopped in front of the vacant lot.

As he pulled in behind the Subaru, [the officer] activated his red and blue rear facing lights but not his overhead emergency lights. He testified that the unimproved dirt field where [Harbison] pulled off the road is an uninhabited and unlit area concealed from view by the road by an elevation discrepancy between the dirt lot and Franklin Road. He pulled in behind [Harbison] because he was concerned that he might have plans to engage in some criminal activity.

[The officer] indicated that when he saw the Subaru turn into a business complex he was suspicious because all of the businesses in the vicinity were closed at 12:15 a.m. and the Planned Parenthood building was nearby. After seeing the Subaru pull of the road and stop in a vacant lot he decided to go back to check on it and investigate further.

There was no evidence presented that the driver of the Subaru committed any driving infractions at the time he turned left into the parking lot. There was no evidence that [the officer] had heard any dispatch reports of any unlawful activity that night near the Planned Parenthood building.

[Harbison] stated in his affidavit and supplemental affidavit that he was driving the Subaru on July 3, 2013, that he turned off Franklin Road into a paved parking lot at 1912 E. Franklin Road. Harbison then drove into a dirt lot about

two to three car lengths from the paved lot and parked with the Subaru facing east. Harbison also states that he did not know where the exits to the parking lot were. Harbison asserts that when the officer pulled in behind him the patrol car "blocked my exit path." However, this assertion is directly contradicted by Harbison's Exhibit A and State's Exhibits 1 and 2 which clearly reveal multiple available exits to the dirt lot had Harbison pulled forward.

Harbison indicated that he noticed the patrol car's rear flashing lights reflected in the windows of a building 25 to 30 yards to the east. Harbison also stated that "because I saw the emergency lights reflecting in the windows behind us, I knew I was not free to drive away and leave the place I was in."

Harbison was charged with DUI. I.C. § 18-8004(1)(a). Harbison moved to suppress all evidence obtained upon the officer's approach to the vehicle, alleging that Harbision was unreasonably seized in violation of the United States and Idaho Constitutions. The magistrate denied Harbison's motion, finding that the officer's conduct did not constitute a seizure of Harbison. Harbison appealed and the district court affirmed. Harbison again appeals.

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* Thus, the appellate courts do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id.*

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

3

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Harbison argues that he was seized for purposes of the Fourth Amendment because a reasonable person in similar circumstances would not have felt free to terminate the encounter with the officer. Specifically, Harbison argues that he reasonably believed he was not free to leave because the officer made a u-turn; parked directly behind Harbison's vehicle, blocking the route of Harbison's entrance; and activated the vehicle's rear-facing, red and blue emergency lights, which were visible to Harbison from a window reflection. This Court need not address this argument on appeal because, assuming, without deciding, that the magistrate erred in holding that Harbison was not seized, the error was harmless because the seizure would have been a valid investigatory detention.

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the state has the burden of demonstrating to the appellate court beyond a reasonable doubt that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010). However, where the error in question is a constitutional violation that affects the base structure of the trial to the point the trial cannot serve its function as a vehicle for the determination of guilt or innocence, the appellate court shall vacate and remand. *Id.* Such structural defects include the complete denial of counsel, a biased trial judge, denial of self-representation, denial of a public trial, defective reasonable doubt instruction, and erroneous deprivation of the right to counsel of choice. *Id.* at 222-23, 245 P.3d at 974-75. Although structural defects require automatic reversal, most constitutional violations will be subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999).

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357,

361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Id.*; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

At 12:16 a.m., an officer saw a vehicle pull into a parking lot, in which all businesses were closed, and drive to an adjacent dirt field. The vehicle's lights were then turned off. From the point at which the vehicle stopped, it was hidden from the view of those driving on the nearby main road. The dirt field in which the vehicle stopped was a short distance from a Planned Parenthood facility which had been the subject of numerous reported crimes, threatened crimes, and criminal investigations. Given these circumstances, the officer had reasonable and articulable suspicion to suspect that the vehicle's occupants may be engaged in some type of criminal activity--specifically, criminal activity associated with the Planned Parenthood building.

Any error resulting from the district court's finding that Harbison was not seized is harmless because, based upon the circumstances of this case, the officer had reasonable suspicion to perform an investigatory detention. The seizure would have been justified for the limited purpose of determining Harbison's purpose for being stopped in the dirt field, in close proximity to the Planned Parenthood building. Therefore, because there was a valid basis for the seizure and the parties do not challenge the resulting search, the magistrate would not have erred in denying Harbison's motion to suppress. Accordingly, the district court's order on intermediate appeal, affirming Harbison's judgment of conviction for DUI, is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.

5