Judge GUTIERREZ, DISSENTING
I respectfully dissent, and I would affirm the district court's orders granting McGraw's and Killeen's motions to suppress. Based on the testimony and recordings of the traffic stop, there was substantial evidence to support a finding that the officers detoured from the initial purpose of the stop and that the collective acts of the officers to conduct an investigation of contraband extended the traffic stop for longer than was reasonably necessary to accomplish the tasks tied to the traffic infraction.
The Fourth Amendment to the United States Constitution provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. Delaware v. Prouse , 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ; State v. Atkinson , 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is *1251 being driven contrary to traffic laws. United States v. Cortez , 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ; State v. Flowers , 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. State v. Ferreira , 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).
The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. State v. Roe , 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004) ; State v. Parkinson , 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). A seizure for a traffic violation justifies a police investigation of that violation, which includes inquiries beyond determining whether to issue a traffic ticket. Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). It encompasses ordinary queries incident to the traffic stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. Id. at ----, 135 S.Ct. at 1615. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." Id.
Similarly, an officer may take certain precautions to ensure officer safety because "the government's officer safety interest stems from the mission of the stop itself." Id. at ----, 135 S.Ct. at 1616 ("Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely.") These precautions include ordering all occupants of a vehicle, driver and passengers, to exit a stopped vehicle as a precautionary measure to protect the officer's safety. Maryland v. Wilson , 519 U.S. 408, 412, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).
Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. Roe , 140 Idaho at 181, 90 P.3d at 931. However, because addressing the traffic infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the infraction are-or reasonably should have been-completed. Rodriguez , ---U.S. ----, 135 S.Ct. at 1614 ; State v. Linze , 161 Idaho 605, 608, 389 P.3d 150, 153 (2016).
However, a traffic stop's purpose does not encompass "[o]n-scene investigation into other crimes." Rodriguez , --- U.S. ----, 135 S.Ct. at 1616. Such an investigation detours from the original mission of the stop. Id. A drug-dog sniff, unlike the routine measures as noted above, is not an ordinary incident of a traffic stop because it lacks the same close connection to roadway safety. Id. at ----, 135 S.Ct. at 1615. Therefore, a drug-dog sniff cannot fairly be characterized as "part of the officer's traffic mission." Id. It is a measure aimed at detecting evidence of criminal wrongdoing and thus constitutes a detour or deviation from the original purpose of the stop. Id. "So too do safety precautions taken in order to facilitate such detours."Id. at ----, 135 S.Ct. at 1616. Yet, not all detours are constitutionally prohibited; only those which prolong the stop for longer than is reasonably necessary to accomplish the mission of the stop. Id. Thus, if conducting an unrelated detour measurably extends the stop, the constitutional shield against unreasonable seizures is violated. Id. at ----, 135 S.Ct. at 1612.
"A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." Id. Thus, in situations where there is both a traffic stop and a drug-dog sniff, the pertinent question is not when the drug-dog sniff occurred, either before or after the issuance of a traffic ticket, but rather whether conducting the drug-dog sniff prolongs or adds time to the stop. Id.
When an officer abandons his or her initial purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure unless some new reasonable suspicion or probable cause *1252 arises to justify the seizure's new purpose. Linze , 161 Idaho at 609, 389 P.3d at 154. Thus, while an officer is justified in inquiring about the ordinary incidents to the traffic stop, without circumstances that justify a reasonable and articulable suspicion of criminal activity, the officer is restrained in extending the search and must diligently complete the task within a reasonable time. Id.
In Linze , the Idaho Supreme Court emphasized the reasoning from Rodriguez that, when a drug-dog sniff occurs contemporaneously with a traffic stop, the pertinent inquiry is not when the drug-dog sniff occurs or how expeditiously the officers conduct the traffic-based inquiries, but whether conducting the drug-dog sniff prolongs or adds time to the stop. Linze , 161 Idaho at 609, 389 P.3d at 154. The rule articulated in Rodriguez and adopted in Linze "isn't concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with the fact that the officer deviates from the original purpose of the stop at all." Id. Therefore, an officer must always be reasonably diligent and refrain from delaying a traffic stop in order to conduct a drug-dog sniff. Id.
If the completion of the mission of the traffic stop is minimally extended in order to conduct the drug-dog sniff, it is unconstitutional. Thus, even if the completion of the mission of the stop is extended by a mere matter of seconds, such a de minimus extension in order to conduct a drug-dog sniff unconstitutionally prolongs the completion of the mission of the traffic stop. Id. Whether conducting the drug-dog sniff measurably extends the duration of the stop in violation of the Fourth Amendment depends on what the officers do. Rodriguez , --- U.S. ----, 135 S.Ct. at 1614-15.
As the district court ruled, the officers impermissibly detoured from the traffic stop. The audio and video recordings reflect that by the time Killeen and McGraw were removed from the vehicle, Officer One had obtained all the necessary information from dispatch and could have written the citation. Yet, instead of issuing the citation, Officer One decided to interrupt the traffic stop to conduct a drug-dog sniff. Officer One placed the citation pad on the hood of the car. Officer Two asked Officer One what the citation was for and once told, Officer Two stated he would look up the code for the violation. Officer One remained where he was, standing between his vehicle and Killeen's. Officer Two picked up the citation pad, walked behind Officer One's vehicle, turned around, went back to the driver's side door of Officer One's vehicle, and opened the door briefly. Then, Officer Two walked behind Officer One's vehicle and positioned himself where he could observe both Killeen and McGraw on the curb and Killeen's vehicle. In the meantime, Officer One waited until Officer Two had positioned himself before turning to retrieve the drug dog. Officer Two then waited until Officer One had taken the drug dog out of the car before beginning to write the citation, approximately forty seconds after receiving the citation book. The district court determined that Officer Two was paying attention to Officer One, "ostensibly" writing the citation, and was intermittently doing so at best.
The district court determined these actions impermissibly prolonged the stop. The record reflects that the actions of the two officers that were focused on Officer One conducting the drug-dog sniff, i.e. , the transfer and delay in the writing and issuing of the citation, delayed the issuance of the citation. As explained in Rodriguez and Linze , officers cannot delay the issuance of a citation in an effort to extend the stop for a drug-dog sniff.
Because the officers' actions taken to pursue the independent investigation for contraband without reasonable suspicion unreasonably prolonged the traffic stop, the seizure became violative of McGraw's and Killeen's Fourth Amendment rights. Thus, any evidence produced after the officers ceased diligently pursuing the traffic stop and detoured to investigate for drugs should be suppressed.