# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45999

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: May 10, 2019 |
| Plaintiff-Appellant, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JENNIE LYNN PYLICAN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Order granting motion to suppress, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent.

_____

HUSKEY, Judge

The State appeals from the district court's order granting Jennie Lynn Pylican's motion to suppress. The State contends first that the officer had reasonable suspicion to investigate why Pylican entered a storage facility after hours, and second, that the officer did not unreasonably extend the seizure when he had Pylican exit her vehicle. Because the officer did not have reasonable and articulable suspicion related to a crime at the storage facility, we affirm the district court's order granting Pylican's motion to suppress.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Around midnight, a police officer observed Pylican enter a storage facility through the storage facility's gate. A sign outside the facility indicated the hours of operation were 8:00 a.m. to 10:00 p.m. and thus, the officer concluded Pylican was inside the storage facility after hours.

1

The officer drove closer to the storage facility and made contact with other police officers who had arrived at the scene. The officer observed a second vehicle inside the storage facility.

Although the officer watched the vehicle for forty minutes, the officer did not observe Pylican engage in any criminal or suspicious activity once she was within the gated area of the storage facility because from his location, the officer could not see what Pylican was doing. The officer could only see that Pylican's vehicle was parked and there was a bit of movement. Soon after, Pylican drove out of the storage facility, and the officer followed her vehicle. When Pylican turned without signaling, the officer initiated a traffic stop. The officer informed Pylican he stopped her for two reasons: first, she failed to use her turn signal; and second, she was in the storage facility after hours. Pylican explained she and her husband were in the storage facility to move from one storage unit to another. According to Pylican, she and her husband entered the storage facility prior to 10:00 p.m. and were allowed to be inside the facility after the posted hours, as long as they entered before 10:00 p.m. The officer thought Pylican was lying because he saw her enter around midnight.

The officer asked Pylican for her driver's license, registration, and insurance. The officer also collected the full name, date of birth, and telephone number of Pylican and the passenger in the vehicle. When asked, Pylican stated there was nothing illegal in the vehicle and she was not drinking alcohol that night. The officer then told Pylican and the passenger to give him a few minutes and he would "cut you guys loose."

As the officer walked away from Pylican's vehicle, he noticed the K-9 officer had arrived. The officer did not check Pylican's information at that point, but instead, he engaged in a short conversation with the K-9 officer about running the K-9 around the vehicle. After that discussion, the officers decided to conduct an exterior K-9 sniff of Pylican's vehicle. The officer returned to Pylican's vehicle and asked Pylican and the passenger to step outside. According to the officer, he needed Pylican and the passenger out of the vehicle "for everyone's safety." When Pylican inquired further, the officer explained he did not need a reason. Pylican and the passenger exited the vehicle and were escorted to the area near the front of the officer's patrol car. Before the officer ran Pylican's information, the K-9 began performing its sniff of the vehicle. While the sniff was ongoing, the officer contacted dispatch to see whether there was a warrant for Pylican or the passenger, and also to check whether Pylican had a valid driver's license. Dispatch informed the officer there was a warrant for the passenger.

2

While Pylican and the passenger stood outside and the officer was speaking with dispatch, the K-9 gave a positive indication outside the vehicle and, once deployed inside the vehicle, the K-9 gave another positive indication on a backpack located in the back seat. When the K-9 officer searched the backpack, he discovered drug paraphernalia. A different officer placed Pylican under arrest for the paraphernalia found in the backpack. An additional search uncovered a contact case containing methamphetamine. The passenger was also arrested pursuant to her outstanding warrant.

The State charged Pylican with felony possession of methamphetamine, Idaho Code § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A. Pylican filed a motion to suppress the evidence seized during the traffic stop and argued that her detention was unreasonably extended in violation of the United States and Idaho Constitutions. The district court granted Pylican's motion to suppress. The State timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State argues the district court erred when it granted Pylican's motion to suppress. The State contends first that the officer had reasonable suspicion to investigate why Pylican entered the storage facility after hours, and second, the officer did not unreasonably extend the seizure when he had Pylican exit her vehicle.[1]

---

[1] The district court rejected the State's argument that the search of Pylican's vehicle was allowed under the doctrine of inevitable discovery. According to the State, under the doctrine of inevitable discovery, the existence of the passenger's warrant would serve as an independent

3

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

In this case, the officer initiated a traffic stop when Pylican failed to use her turn signal. The district court concluded the officer was justified in seizing Pylican for the traffic infraction, and neither party disputes this finding on appeal. During the traffic stop, the officer engaged in questioning Pylican regarding her activities at the storage facility. As the State acknowledges, unless the officer also had reasonable suspicion of criminal activity at the storage facility, the stop for the traffic violation was unconstitutionally extended because the questioning about Pylican's presence in the storage facility was unrelated to the permissible stop for the traffic violation. We must therefore determine if the officer had reasonable suspicion to stop Pylican for the activities at the storage facility.

The State argues that independent of the traffic violation, the officer had reasonable suspicion to investigate why Pylican was inside the storage facility after hours. The determination of whether an investigative detention is reasonable requires a dual inquire-- whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. An investigative detention is permissible if it is based upon specific articulable facts which

_____

objectively reasonable basis for the officer to detain Pylican and the passenger. The district court was not persuaded. On appeal, the State does not challenge the district court's holding that inevitable discovery did not justify the search and seizure in this case.

4

justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

According to the State, the officer witnessed Pylican enter the storage facility after it was closed, which was enough to create a reasonable and articulable suspicion that Pylican had been or was about to be engaged in criminal activity. The State concludes it was therefore reasonable for the officer to detain Pylican in order to find out if she entered the storage facility for criminal purposes. We are not persuaded. The officer did not provide any evidence of suspicious activity at the storage facility that would justify Pylican's detention. The officer did not see Pylican break into the facility. There is no evidence Pylican forced open the gate or snuck inside the area. Instead, testimony showed that Pylican accessed the storage facility through the gate by use of an access code. While Pylican was at the storage facility, the officer called dispatch to check Pylican's license plate. Everything returned normal--the vehicle had a licensed and registered owner and the vehicle was not stolen. Although the officer watched the vehicle for forty minutes, the officer did not observe Pylican engage in any criminal or suspicious activity once she was within the gated area of the storage facility because, from his location, the officer could not see what Pylican was doing. The officer could only see that Pylican's vehicle was parked and there was a bit of movement. Aside from the traffic violation, the officer's only articulable suspicion of suspected criminal activity was Pylican's presence inside the storage facility later than the posted hours of operation. The district court found that Pylican's mere presence in the storage facility after hours did not mean Pylican was committing a crime, and we agree. While it is true that the storage facility's hours of operation were 8:00 a.m. to 10:00 p.m. and Pylican entered the facility near 12:00 a.m., this alone is not sufficiently particularized suspicion that Pylican had engaged in or was about to engage in criminal activity. Thus, the officer did not have reasonable and articulable suspicion to seize Pylican.

Because the officer did not have reasonable and articulable suspicion related to a crime at the storage facility, the traffic stop of Pylican was impermissibly extended when the officer asked Pylican about her presence at the storage facility. The impermissible extension of the stop is determinative in this case, and we therefore do not need to address whether an independent constitutional violation occurred when the officer ordered Pylican out of the vehicle. The State therefore fails to show the district court erred when it granted Pylican's motion to suppress.

5

## IV.
## CONCLUSION

Because the officer did not have reasonable and articulable suspicion related to a crime at the storage facility, we affirm the district court's order granting Pylican's motion to suppress.

Chief Judge GRATTON and Judge BRAILSFORD **CONCUR**.