# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47818

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

DANIELLE L. FITZPATRICK,

    Defendant-Appellant.

)
)  Filed: September 8, 2021
)
)  Melanie Gagnepain, Clerk
)
)  THIS IS AN UNPUBLISHED
)  OPINION AND SHALL NOT
)  BE CITED AS AUTHORITY
)
)

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction for possession of methamphetamine and misdemeanor driving under the influence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Danielle L. Fitzpatrick appeals from her judgment of conviction for possession of methamphetamine and misdemeanor driving under the influence. Specifically, Fitzpatrick challenges the district court's order denying her motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a suppression hearing, the district court issued a written decision finding the following facts, which neither party challenges on appeal:

> On May 9, 2019 around 9:50 a.m., Officer Jered Bish of the Boise Police Department was on bicycle patrol when he noticed a maroon colored Ford Mustang being driven northbound on 13th Street by a white female. Officer Bish later observed the vehicle parked illegally on West Cooper Street, just north of S. Americana Boulevard. The vehicle was parked between a "no parking" sign

1

and a stop sign. Officer Bish contacted the driver, [Fitzpatrick], through the passenger window and asked her to back up the vehicle behind the "no parking" sign so as to park legally. Officer Bish then departed from the vehicle.

Before Officer Bish left the vicinity, he observed the same vehicle again parked illegally. This time the vehicle was parked approximately two to three feet away from the curb. Officer Bish returned to the vehicle to make contact again with [Fitzpatrick], whom he recognized from prior interactions on the streets. Officer Bish attempted to make contact with [Fitzpatrick] through the driver side window, which was rolled down only slightly. [Fitzpatrick], however, was talking on her cell phone, seemingly unaware or unconcerned that Officer Bish was standing there waiting to speak to her. Her speech while on the phone was rapid and incessant, and she was wildly gesticulating with her hands and moving her head back and forth. After about thirty seconds, she put down the phone yet continued to behave manically, persistently talking about various unrelated topics, gesticulating and swinging her head from side to side. Her speech was difficult for Officer Bish to understand and she often mumbled and slurred her words. She would not look at Officer Bish and it appeared at times that she was unaware of his presence. Though wearing light clothing, [Fitzpatrick] was sweating profusely despite the cool air temperature that morning.

About two and one-half minutes into the encounter, Officer Bish interrupted her to ask for her identification. She was able to convey that she did not have identification on her, but she handed Officer Bish her car registration. She indicated she had a valid driver's license from Delaware and verbally provided her driver's license number and birthdate. Based on her extremely animated demeanor and profuse sweating, Officer Bish suspected--based on his training and experience--that [Fitzpatrick] was under the influence of some kind of stimulant while operating the vehicle.

Approximately four and one-half minutes into the encounter, Officer Bish ran [Fitzpatrick's] information through dispatch and requested a drug dog [which he later learned was unavailable]. After receiving information back from dispatch, Officer Bish walked back over to [Fitzpatrick's] vehicle where she appeared to be talking on the phone again. Concerned about her level of impairment, Officer Bish retained her vehicle registration, thus detaining her. Officer Bish waited a few minutes until he realized that [Fitzpatrick] was not talking on the phone but was apparently talking to him. She continued to ramble on excitedly about various topics. She could not maintain eye contract with Officer Bish and he could hardly get a word in edgewise. Approximately eleven minutes into the stop, Officer Bish observed aloud that she appeared more animated than on prior occasions when he had interacted with her. He asked when the last time was that she used meth. [Fitzpatrick's] manic monologue then turned to her mental health and aversion to drugs. Officer Bish asked whether she had any drugs or weapons in the car, but could not get an answer out of her. He asked a few times if he could search her car, which she finally denied.

Officer Bish made several requests for [Fitzpatrick] to exit the vehicle, but she continuously refused his requests, even instructing her male passenger to remain in the vehicle. Officer Bish eventually opened the driver side door and

2

assisted [Fitzpatrick] out of the vehicle. He escorted her to the sidewalk and attempted to administer a horizontal gaze nystagmus test but [Fitzpatrick] was unable to concentrate and follow his directions. [Fitzpatrick] then complained that she thought she was having a heart attack. Officer Bish stopped his test and called an ambulance.

While waiting for paramedics, Officer Bish--while standing outside her vehicle--observed white crystalline shards on the driver's seat which he strongly suspected was methamphetamine. While paramedics attended to [Fitzpatrick], the shards were collected and field tested resulting in a presumptive positive for amphetamine.

[Fitzpatrick] was then cleared by paramedics on the scene who noted that her blood pressure and pulse were both elevated. She was then arrested on suspicion of DUI and unlawful possession of a controlled substance.

(Footnotes omitted).

As a result of this encounter, the State charged Fitzpatrick with possession of methamphetamine, Idaho Code § 37-2732(c)(1), and misdemeanor driving under the influence (DUI), I.C. § 18-8004. Fitzpatrick filed a suppression motion, arguing Officer Bish deviated from the traffic stop's purpose and unlawfully prolonged the detention. The district court held a suppression hearing at which Officer Bish testified and the State admitted the video from his body camera in evidence. Subsequently, the court entered a written order denying Fitzpatrick's motion. The court ruled that "during [the] first few minutes, if not immediately . . . Officer Bish developed reasonable suspicion [Fitzpatrick] was driving under the influence" and "because the focus of the stop evolved into a DUI and drug investigation, [Officer Bish] was entitled to question [Fitzpatrick] about her drug use, ask whether he could search her car and have her exit the vehicle to conduct a field sobriety test." Further, the court rejected Fitzpatrick's argument that Officer Bish unlawfully prolonged the stop concluding that "Officer Bish was informed there was no drug dog available; thus, any suggestion that he was delaying for that reason is groundless."

Thereafter, Fitzpatrick conditionally pled guilty both to possession of methamphetamine and to DUI. Fitzpatrick timely appeals the denial of her suppression motion.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

3

as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Fitzpatrick argues that Officer Bish unlawfully prolonged the traffic stop without reasonable suspicion that she was driving under the influence.  The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures.  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.  Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws.  *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).  The reasonableness of the suspicion must be evaluated on the totality of the circumstances at the time of the stop.  *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).  In the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed.  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  Such tasks include ordinary inquiries incident to the stop such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.  *Rodriguez v. United States*, 575 U.S. 348, 355 (2015); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

A traffic stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop to which the reasonable suspicion relates.  *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016).  An officer's inquiries into matters unrelated to the justification for the stop do not convert that stop into an unlawful seizure in violation of the Fourth Amendment "so long as those inquiries do not measurably extend the duration of the stop."  *Johnson*, 555 U.S. at 333; *State v. Renteria*, 163 Idaho 545, 549, 415 P.3d 954, 958 (Ct. App. 2018).  If an officer

4

abandons the purpose of the stop, however, he initiates a new seizure requiring independent reasonable suspicion for that seizure. *Linze*, 161 Idaho at 609, 389 P.3d at 154. The new seizure cannot "piggy-back" on the reasonable suspicion for the original stop. *Id.* An officer does not abandon a stop and initiate a new seizure if his activity unrelated to the stop occurs concurrently with his activity related to pursuing the stop. *Renteria*, 163 Idaho at 549, 415 P.3d at 958; *State v. Parkinson*, 135 Idaho 357, 362-63, 17 P.3d 301, 306-07 (Ct. App. 2000).

Fitzpatrick does not dispute Officer Bish had reasonable suspicion that Fitzpatrick's vehicle was illegally parked in violation of the Boise City Code. Rather, she argues "the critical question at issue is whether Officer Bish had reasonable suspicion that [Fitzpatrick] was driving under the influence of a controlled substance after his initial encounter with her." She describes Officer Bish's observations to include that Fitzpatrick was "very animated and fidgeting while talking"; "difficult to understand due to her mumbling and talking constantly"; "sweating"; "talking in a low timbre"; and "having difficulty answering questions." She contends this behavior "was indicative of nervousness" which did not justify prolonging the traffic stop to investigate a possible DUI. In support, Fitzpatrick relies on *State v. Kelley*, 160 Idaho 761, 379 P.3d 351 (Ct. App. 2016), and *State v. Neal*, 159 Idaho 919, 367 P.3d 1231 (Ct. App. 2016).

In *Neal*, an officer stopped Neal's vehicle for traffic violations and noted "Neal was exhibiting signs of anxiousness and had a marijuana leaf symbol depicted on his shirt." *Id.* at 921, 367 P.3d at 1233. After Neal refused the officer's request to search Neal's vehicle, the officer requested a K-9 unit which arrived twenty minutes later. *Id.* The dog alerted on the vehicle, and the officer searched the vehicle without a warrant, leading to the discovery of drug paraphernalia and other evidence indicative of drug dealing. *Id.* The officer arrested Neal, and during the booking process, heroine, methamphetamine, and hydrocodone pills were found in Neal's underwear. *Id.* Neal filed a motion to suppress the seized evidence, and the district court granted the motion, ruling the officer unlawfully extended Neal's detention. *Id.* The State appealed this ruling. *Id.*

On appeal, this Court affirmed the district court's decision granting Neal's suppression motion. *Id.* at 925, 367 P.3d at 1237. The Court noted the officer testified "he noticed that Neal's face was wet with sweat, his left leg was bouncing steadily, he appeared to have difficulty sitting still, and his speech was quick or rapid." *Id.* at 924, 367 P.3d at 1236. The Court rejected

these observations as sufficient to establish reasonable suspicion of a possible drug crime, ruling that:

> A nervous demeanor during an encounter with law enforcement is of limited significance in establishing the presence of reasonable suspicion because it is common for people to exhibit signs of nervousness when confronted with law enforcement regardless of criminal activity. . . . [Signs] of nervousness . . . are alone insufficient to establish reasonable suspicion.

*Id.* (citations and footnote omitted). Additionally, the Court noted that "the videotape of the encounter did not support the officer's testimony regarding Neal's anxious behavior." *Id.* at 924, 367 P.3d at 1236. Similarly, this Court in *Kelley*, 160 Idaho at 763, 379 P.3d at 353, rejected Kelley's "extreme nervousness" as sufficient to establish reasonable suspicion. *Id.* That nervous conduct included his "[lack of] eye contact," "continued trembling on a warm evening," and "pulsing carotid artery." *Id.* at 763, 379 P.3d at 353.

This case is distinguishable from *Kelley* and *Neal*. Unlike those cases, Fitzpatrick's demeanor cannot be fairly characterized as the type of nervousness commonly exhibited by people confronted with law enforcement. *Neal*, 159 Idaho at 924, 367 P.3d at 1236 (ruling such demeanor is of "limited significance" in establishing reasonable suspicion). Further, unlike *Neal*, the video from Officer Bish's body camera supports his testimony that Fitzpatrick's demeanor was not "typical nervous behavior." A review of the video shows that, as the district court found, Fitzpatrick's "nervousness is not at all typical of what one would expect for being stopped for a traffic infraction," but rather her demeanor was "bizarre" and "manic."

Indeed, the video shows that Fitzpatrick's speech is rapid, repetitive, scattered, and difficult to understand and that her body movements are exaggerated and continuous despite that she remains seated in her vehicle. The video also shows this erratic conduct was evident when Officer Bish initially approached Fitzpatrick to inform her that she was still parked illegally. Additionally, Officer Bish testified that he had previously encountered Fitzpatrick, and on those occasions, he had not noticed Fitzpatrick behaving as she did the day he arrested her.[1] Accordingly, substantial and competent evidence supports the court's conclusion that under the totality of circumstances, Officer Bish developed reasonable suspicion Fitzpatrick was driving under the influence during the "first few minutes" of his encounter "if not immediately," and as a

---

[1] The audio of the video from Officer Bish's body camera repeatedly captures Officer Bish telling Fitzpatrick that her demeanor seems different than when he had previously encountered her.

6

result, he did not unlawfully prolong the detention by investigating whether Fitzpatrick was under the influence.

## IV.

## CONCLUSION

We affirm the district court's denial of Fitzpatrick's suppression motion and the judgment of conviction.

Judge GRATTON and Judge LORELLO **CONCUR**.