**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42806**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 14** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed:  February 25, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **BRIAN ELLIS NEAL,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Jeff M. Brudie, District Judge.

Judgment granting motion to suppress, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.  Russell J. Spencer argued.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.  Jenny C. Swinford argued.

---

GRATTON, Judge

The State of Idaho appeals from the district court's order granting Brian Ellis Neal's motion to suppress.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 24, 2014, at 12:30 a.m., Neal was stopped for failing to signal when merging, failing to signal a lane change, and for window tinting darker than allowed by law.  Upon making contact with Neal, the officer advised Neal why he had been stopped and acquired his Washington driver's license, vehicle registration, and proof of insurance.  Neal's insurance card was expired; however, Neal explained that his insurance was up-to-date and a new insurance card was in the mail.  After the exchange, the officer noted that Neal was exhibiting signs of anxiousness and had a marijuana leaf symbol depicted on his shirt.  The officer questioned Neal

1

and then asked to search Neal's vehicle which Neal refused. The officer informed Neal that he would be calling a K-9 unit and had Neal step out of his vehicle.

Twenty minutes later, the K-9 unit arrived and the dog quickly alerted to the odor of drugs in the vehicle. Neal's vehicle was then searched without a warrant. The search yielded drug paraphernalia, two notepads with names and numbers, and $1,677.00 in cash was found in Neal's wallet. The officer arrested Neal for possession of drug paraphernalia and transported him to jail. During the booking process, jail staff found a black sock in Neal's underwear that contained a plastic baggy with two substances believed to be heroin and methamphetamine and pills identified as hydrocodone.

The State charged Neal with trafficking heroin and possession with the intent to distribute methamphetamine. Neal filed a motion to suppress the evidence, arguing that it was obtained through an unlawful search and seizure. After a hearing on the motion, the district court granted the motion, finding that Neal's detention was unlawfully extended. The State filed a motion to reconsider and the district court denied the motion. The State timely appealed.

## II.

## ANALYSIS

On appeal, the State argues that the district court erred by granting Neal's motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although Neal contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Neal's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

2

The State challenges the district court's conclusion that the officer unreasonably extended the length of the traffic stop to allow for the drug investigation and drug dog search. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, evidence obtained as a result of an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). Typically, seizures must be based on probable cause to be reasonable. *Florida v. Royer*, 460 U.S. 491, 499-500 (1983). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.*

The State asserts that the drug investigation was legal because the officer observed facts that reasonably led him to believe Neal was engaged in illegal drug activity. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17

P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

Here, part one of the two-part test has been satisfied because a traffic infraction prompted the initial traffic stop. "Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws." *Roe*, 140 Idaho at 180, 90 P.3d at 930. However, the purpose of an investigative stop is not permanently fixed at the moment the stop is initiated because suspicion of criminality different from that which initially prompted the stop may evolve. *Sheldon*, 139 Idaho at 984, 88 P.3d at 1224. After the officer acquired Neal's information, his questioning[1] and investigation clearly went beyond the scope of a traffic violation and an expired insurance investigation and extended the duration of the stop.[2]

---

[1] The State asserts that, regardless of any drug investigation activities, the officer did not extend the traffic violation stop. However, we conclude that the officer began the drug investigation activities upon his initial encounter with Neal and questioned Neal beyond that which is generally permissible incident to a traffic stop. While certain generalized questions have been allowed as a matter of routine during traffic stops, the officer's questions here went well beyond what is allowed. *State v. Hays*, 159 Idaho 476, 480, 362 P.3d 551, 555 (Ct. App. 2015) ("Typically, general questioning on topics unrelated to the purpose of the stop is permissible only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" (citation omitted)).

[2]
| Yount: | OK. How come you're so anxious here? |
|---|---|
| Neal: | I don't know. You [inaudible] get pulled over, it's like, you know. |
| Yount: | OK. |
| Neal: | Makes you seem anxious. |
| Yount: | You do seem anxious to me. All the property in the car belongs to you? |
| Neal: | Everything. |
| Yount: | Any weapons or firearms in the car? |
| Neal: | Absolutely not. |
| Yount: | OK. Anything illegal in the vehicle? |
| Neal: | Absolutely not. |
| Yount: | OK. What's on your shirt there? |
| Neal: | Space Needle. |

Therefore, we must determine if the officer had reasonable suspicion under the totality of the circumstances to justify the extended detention.

In the order granting Neal's motion to suppress, the district court determined that the detention of Neal was unlawfully extended. The court found that signs of anxiety, attire, and refusal to allow the vehicle to be searched were insufficient to establish reasonable suspicion for a drug investigation. The district court also determined that the officer's investigative actions

| | |
|---|---|
| Yount: | OK. Looks like a marijuana leaf there. |
| Neal: | Something like that. |
| Yount: | Yeah. Do you promote marijuana? |
| Neal: | No, I don't promote it. I don't think that it should be illegal, but I don't take it. I don't partake. I don't care either way. It doesn't matter to me. I like Seattle. I lived there for like 16 years. |
| Yount: | OK. Is there any marijuana in the car? |
| Neal: | Absolutely not. |
| Yount: | OK. And you didn't have that more current insurance card? |
| Neal: | No, it's in the mail probably. I'm up-to-date. |
| Yount: | OK. You still seem to be sweating there in the face. |
| Neal: | Yeah, I know it's cause I'm hot. I got my hat on. Take my hat off. |
| Yount: | It's pretty cool out here. |
| Neal: | I know it feels good out there. |
| Yount: | So you're saying that there's noth . . . |
| Neal: | [Inaudible]. |
| Yount: | You're saying there's nothing illegal in the car at all? |
| Neal: | No there's nothing illegal in the car. |
| Yount: | And your anxiety is because you got . . . |
| Neal: | Yeah. I do take anxiety meds. |
| . . . . | |
| Yount: | When we finish up here will you let me search your car? |
| Neal: | No, no, no I don't really want you to search my car. |
| Yount: | OK. Well, I think, you know, based on how you're acting I think there's something in the car you shouldn't have. Is there any reason a narcotics K-9 will alert to anything? |
| Neal: | No. No. |
| Yount: | OK. Well I'm gonna go request one come out here. |
| Neal: | Alright. |
| Yount: | OK. Any paraphernalia or anything? |
| Neal: | Nope. |
| Yount: | OK. Now you're starting to breathe heavier. |
| Neal: | Sir, you're giving me the third degree. I don't have nothing wrong with me. |
| Yount: | I'm just asking you simple questions, and you're beginning to sweat more from your face. |

5

were inconsistent with his articulated basis for the investigation--driving under the influence of drugs--because while waiting for the K-9 unit, the officer did not call a drug recognition expert, conduct any drug recognition tests himself, or conduct standard field sobriety tests.[3]

The State asserts that the officer was entitled to expand the scope of his investigation into drug crimes because, based upon his experience and law enforcement training, he believed that Neal was under the influence of a central nervous system drug. During his encounter with Neal, the officer testified that he noticed that Neal's face was wet with sweat, his left leg was bouncing steadily, he appeared to have difficulty sitting still, and his speech was quick or rapid. A nervous demeanor during an encounter with law enforcement is of limited significance in establishing the presence of reasonable suspicion because it is common for people to exhibit signs of nervousness when confronted with law enforcement regardless of criminal activity. *State v. Zuniga*, 143 Idaho 431, 435, 146 P.3d 697, 701 (Ct. App. 2006); *State v. Gibson*, 141 Idaho 277, 285-86, 108 P.3d 424, 432-33 (Ct. App. 2005).[4] Each of the attributes attached to Neal's purported demeanor are consistent with signs of nervousness and as such, are alone insufficient to establish reasonable suspicion. Moreover, the district court observed that the videotape of the encounter did not support the officer's testimony regarding Neal's anxious behavior. While the State disagrees with the district court's finding, it is supported by the record. Therefore, this Court accepts the trial court's finding.

The State also contends that Neal's attire contributed to the officer's reasonable suspicion that Neal was engaged in illegal drug activity. Neal's t-shirt depicted a marijuana leaf behind the Seattle Space Needle. Idaho case law does not address whether a marijuana leaf on an individual's t-shirt is significant or sufficient to establish reasonable suspicion. In *State v. Morfin-Estrada*, 283 P.3d 378, 385 (Or. Ct. App. 2012), the court held that appearance alone

---

[3] We note, further, that when the officer stated to Neal he was going to expand the drug investigation, it was not due to suspicion of driving under the influence of drugs, but because the officer thought "there's something in the car you shouldn't have."

[4] The State asserts that Neal's explanation for his nervousness demeanor is not sufficient because "the existence of alternative innocent explanations does not necessarily negate reasonable suspicion." *State v. Danney*, 153 Idaho 405, 411, 283 P.3d 722, 728 (2012). However, the issue is not Neal's alternative explanation for his nervous behavior. Rather, the issue is that the behavior he exhibited is consistent with signs of nervousness which have limited significance in establishing reasonable suspicion.

cannot support reasonable suspicion of criminal activity. The court noted, however, that clothing may announce gang affiliation. *Id.* Here, Neal's clothing may suggest non-opposition to or support for marijuana use, but by itself does not support reasonable suspicion of current criminal activity.

The State notes that the district court failed to consider in its analysis that the events took place at 12:40 a.m. However, the State offers no further analysis as to why the timing of the stop is relevant.[5] We have previously held that time of day is of little significance in determining reasonable suspicion. *State v. Emory*, 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct. App. 1991) ("the fact that the stop occurred in the early morning hours does not enhance the suspicious nature of the observation"). The State has not offered a reason why the time of the stop helps to establish reasonable suspicion.

During the officer's investigation, he asked to search Neal's vehicle. Neal denied the officer's request to search, after which the officer informed Neal he intended to have a narcotics detection canine respond to the scene and had Neal step out of the vehicle. We have not been directed to any case law that expressly addresses the role that refusal to consent to a search may play in determining reasonable suspicion for an investigatory stop. However, as we noted in *State v. Aguirre*, 141 Idaho 560, 564, 112 P.3d 848, 852 (Ct. App. 2005), a driver has the right to refuse to consent to a search. It is an individual's right to refuse the search of his vehicle and that right would be eviscerated if such refusal could itself give rise to reasonable suspicion, thereby rendering consent unnecessary.

While none of these factors alone is sufficient to establish reasonable suspicion, our analysis must evaluate the totality of the circumstances. The United States Supreme Court has held that innocent acts, when considered together, can be sufficiently suspicious so as to justify an investigative detention. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). The factors known to the officer were Neal's nervousness, attire, and the time of day, and after substantial questioning, Neal's refusal to consent to a search of his automobile. As noted above, none of these factors alone bears more than little significance in a reasonable suspicion analysis. Taken together, they still do not support a reasonable suspicion, even considering the officer's experience, that Neal was engaged in criminal activity. The sequence of events resembles an

---

[5] The State's only reference to the time of day is "[T]he court failed to weigh the fact that the encounter occurred at 12:40 a.m."

experienced officer's "hunch" that something was out of the ordinary, but a hunch is not sufficient to meet the stringent requirements of the Fourth Amendment. *Id.* at 7. Absent other articulable facts that Neal was engaged in criminal activity, the officer's detainment was unjustified.[6] As such, we hold that the totality of the circumstances were inadequate to create reasonable suspicion for a drug investigation.

## III.

## CONCLUSION

The facts known by the officer in totality did not support reasonable suspicion that Neal was engaged in criminal activity. Therefore, the stop was impermissibly extended and the district court did not commit error in granting Neal's motion to suppress. Accordingly, the judgment of the district court is affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.

---

[6] The State argues that the officer learned from dispatch of Neal's drug history and probation status in Washington, which further supports reasonable suspicion. However, that information came after the officer improperly extended the stop.