**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49208**

| | |
|---|---|
| STATE OF IDAHO, )<br>　　　　　　　　　　　　　　) | |

STATE OF IDAHO,　　　　　　　　)
　　　　　　　　　　　　　　　　)　**Filed:  November 23, 2022**
　　　　**Plaintiff-Respondent,**　)
　　　　　　　　　　　　　　　　)　**Melanie Gagnepain, Clerk**
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　**THIS IS AN UNPUBLISHED**
**KERI LYNN MORRIS,**　　　　　)　**OPINION AND SHALL NOT**
　　　　　　　　　　　　　　　　)　**BE CITED AS AUTHORITY**
　　　　**Defendant-Appellant.**　)
　　　　　　　　　　　　　　　　)

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Derrick O'Neill, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Keri Lynn Morris appeals from the judgment of conviction entered upon her conditional guilty plea to possession of a controlled substance.  Morris asserts the district court erred in denying her motion to suppress.  For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Law enforcement received a call from the manager of a business expressing concern about a woman in the parking lot near a busy road.  The caller explained that the woman had possible drug issues and seemed to be having trouble with her phone.[1]  Officer Sontag and Officer Sousa responded to the call around 11:30 a.m., and both made contact with the woman, later identified

_____

[1]     Officer Sontag testified that the caller thought Morris was "tweaking," which is commonly used slang for someone under the influence of narcotics.

as Morris. Morris was sitting on a curb near the road and told the officers that she was trying to call someone for a ride but her phone was locked. Morris explained she had been kicked out of a halfway house the previous night because she failed a drug test and had nowhere to go, so she sat in the parking lot all night. Morris again told officers that she was trying to call someone for a ride and could not unlock her phone. Officer Sousa asked Morris for her identification, and Morris gave him her driver's license.[2] As Morris was handing Officer Sousa her license, she asked, "Am I in trouble?" Officer Sousa responded, "No, no, we're just, we're just here to check on you and make sure you're doing okay, alright." After Morris handed Officer Sousa her license, Officer Sontag and Officer Morris engaged in additional conversation, with Morris admitting she had used drugs the previous morning. After additional conversation, Morris consented to a search of her belongings, which yielded methamphetamine and a syringe. Morris was placed under arrest for possession of methamphetamine and possession of drug paraphernalia.

The State charged Morris with felony possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A. Pursuant to I.C. § 37-2739, the State sought a subsequent offense enhancement penalty. Morris filed a motion to suppress arguing that she was unlawfully seized when Officer Sousa asked for her identification and then retained her driver's license. Morris also argued that even if the entirety of her encounter with the officers was lawful, her consent to search her property was an involuntary product of police coercion. The State objected to the motion, arguing that Morris was not unlawfully detained as Officer Sousa had reasonable suspicion of criminal activity at the time he asked for Morris's identification[3] and during the limited detention, Morris consented to the search of her belongings and the consent was valid and voluntarily given.

The district court did not address whether a limited detention occurred at any point during the officers' encounter with Morris and instead concluded Morris "was not arrested nor was her property seized until after she had given consent to the search of her property and drugs were

---

[2]     As both parties acknowledge, the district court's factual findings incorrectly attribute this action to Officer Sontag. The body camera footage and testimony show it was Officer Sousa who asked for Morris's identification and then examined her driver's license.

[3]     The State argued the officer had reasonable suspicion Morris was under the influence of a controlled substance (Idaho Code § 37-2732C), in possession of a controlled substance (I.C. § 37-2732(c)), or loitering (Boise City Code 5-2-3(A)(2)).

discovered." The district court concluded Morris freely and voluntarily consented to the search of her property. Accordingly, the district court denied the motion to suppress.

Morris entered a conditional guilty plea to felony possession of a controlled substance, reserving her right to appeal the district court's denial of her motion to suppress, and the State dismissed the paraphernalia charge and the subsequent offense enhancement. Morris timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Morris challenges the district court's denial of her motion to suppress.[4] While Morris concedes that at the time Officer Sousa asked for her identification, the contact was consensual, she argues she was detained without reasonable suspicion of criminal activity when Officer Sousa kept her license while he stood next to her and talked to dispatch and when he walked back to his patrol car with the license. The State argues that Morris was not detained until Officer Sousa returned to his patrol car with her driver's license and at that time, he had reasonable suspicion of criminal activity. Further, the State asserts that because Morris thereafter consented to a search of her belongings during her lawful detention, there was no Fourth Amendment violation and the district court did not err by denying her motion to suppress. In reply, Morris asserts the State's argument that she was not detained until Officer Sousa returned to his patrol vehicle with Morris's

---

[4] Although Morris asserts a violation of her rights under both the federal and Idaho constitutions, she has made no argument that Article I, Section 17 of the Idaho Constitution applies differently or provides greater protection than the Fourth Amendment.

license is unpreserved because the State "did not take that express position in its Objection to Motion to Suppress and Memo in Support of Objection." Instead, Morris asserts that in the district court, the State argued that the officers had reasonable suspicion to detain Morris when Officer Sousa asked for her identification.

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983).

Thus, an officer may generally ask an individual questions and ask to examine identification, and in doing so does not constitute a seizure so long as the officer is not on a "suspicionless fishing expedition," *Utah v. Strieff*, 579 U.S. 232, 233 (2016), and does not convey a message that compliance with the request is required, *Fry*, 122 Idaho at 102, 831 P.2d at 944. *State v. Couch*, 169 Idaho 852, 856, 504 P.3d 388, 392 (Ct. App. 2021). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498.

An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). An officer may draw reasonable inferences from the facts in the officer's possession to support reasonable suspicion, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the seizure. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).

On appeal, the State concedes that a limited detention occurred when Officer Sousa retained Morris's license, but that did not occur until the officer returned to his patrol car with Morris's license. We do not need to address whether Morris was detained when Officer Sousa took Morris's driver license and stood next to her or when he returned to his patrol car with her license (or whether the State's position on the issue was preserved) because, at the time Officer Sousa asked for and examined Morris's license, the totality of the existing circumstances gave rise to reasonable suspicion that Morris was, had been, or was about to be engaged in criminal activity.

Law enforcement was contacted by an individual concerned that Morris was under the influence of drugs near a busy road and that she might wander into traffic on that road. Officer Sontag testified that immediately after arriving at the scene, he observed that Morris had rigid body tone and rigid movements. Officer Sontag also testified that Morris had uncontrollable body movements, rapid speech, and bruxism in her jaw. Officer Sontag testified that he is a trained drug abuse recognition expert. Although Officer Sontag used various terms, his testimony as a whole indicated that at the time Officer Sousa asked for Morris's identification, her behaviors were indicative of being under the influence of or of having recently used illegal narcotics, CNS stimulant, or methamphetamine.[5]

Morris argues that her rigid body tone, rigid movements, and other attributes of her demeanor were consistent with signs of nervousness and cites to *State v. Neal*, 159 Idaho 919, 367 P.3d 1231 (Ct. App. 2016) for the proposition that indicia of nervousness is of limited significance in assessing whether the totality of the circumstances gave rise to the officers' reasonable suspicion. In *Neal*, after making contact with Neal during a traffic stop, the officer noted that Neal was exhibiting signs of anxiousness, later testifying that Neal's face was wet with sweat, his left leg was bouncing steadily, he appeared to have difficulty sitting still, and his speech was quick or rapid. *Id*. at 921, 924, 367 P.3d at 1233, 1236. On appeal, we held that these nervous behaviors were of limited significance in establishing the presence of reasonable suspicion for detention, because it is common for people to exhibit signs of nervousness when confronted with law enforcement regardless of criminal activity. *Id*. at 924, 367 P.3d at 1234. Unlike *Neal*, however,

---

[5] Morris notes that Officer Sontag "did not specify in his testimony that he had observed all of those attributes before Ms. Morris handed over her license." While Morris is correct that Officer Sontag did not specify exactly when he observed these behaviors, nothing in his testimony indicates that Morris's behavior changed during the encounter. Thus, these observations would apply both at the time Officer Sontag asked for Morris's license and thereafter.

Morris provides no citation to evidence in the record or other authority that rigid body tone, rigid movement, uncontrollable body movements, rapid speech, or bruxism in her jaw are consistent with nervousness or anxiety. Instead, Officer Sontag testified these symptoms were indicative of being under the influence of a controlled substance, specifically a CNS stimulant or methamphetamine.

Additionally, Officer Sontag did not rely solely on Morris's physical behaviors or characteristics. In addition to the physical symptoms observed, Morris also told Officer Sousa she had been kicked out of her halfway house the preceding evening because she failed a urinalysis test, had no placed to stay, and sat in the parking lot all night. Officer Sontag testified there was a relationship between being up all night and methamphetamine use. Morris was struggling with her phone and explained that she was unable to unlock it; Morris told the officers her phone had been "screwing up a lot" and that she had accidentally called 911. This indicated to Officer Sontag that Morris was not able to concentrate; and lack of concentration was consistent with being under the influence of a controlled substance.

But even if Morris's physical symptoms were indicative of anxiety or nervousness, the United States Supreme Court has held that innocent acts, when considered together, can be sufficiently suspicious so as to justify an investigative detention. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). The totality of the circumstances known to Officer Sousa at the time he requested Morris's identification were: (1) the dispatch phone call described Morris's behavior as "tweaking"; (2) Morris was kicked out of the half-way house the preceding evening for a failed urinalysis; (3) Morris's statement that she had been up all night; (4) Morris's rigid body tone, rigid movements, uncontrollable body movements, rapid speech, and bruxism in her jaw; and (5) Morris's inability to focus. The totality of the factual circumstances, in conjunction with Officer Sontag's training and experience, support a conclusion that Officer Sontag had reasonable suspicion that Morris was, had been, or was about to be engaged in criminal activity at the time Officer Sousa asked for Morris's identification. Thus, the subsequent limited detention was constitutionally permissible and the methamphetamine and paraphernalia discovered during that search were admissible evidence.

**IV.**

**CONCLUSION**

The limited detention that occurred after Officer Sousa requested Morris's driver's identification was supported by reasonable suspicion. Morris consented to a search of her belongings during that limited detention and methamphetamine was discovered. There is no basis on which to exclude the methamphetamine and, therefore, the district court did not err in denying Morris's motion to suppress. The judgment of conviction is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.